## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALAN D. JACOBSON, <br><br> *Plaintiff*, <br><br> v. <br><br> RICHARD M. BURR, <br><br> *Defendant*. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No. _____

## COMPLAINT

Plaintiff Alan D. Jacobson ("Plaintiff") alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters:

## INTRODUCTION

1.      This lawsuit is brought to redress acts of securities fraud committed by Defendant Richard M. Burr, a United States Senator, who has acted as a scofflaw in a time of national crisis. On February 13, 2020, exploiting material information unavailable to the public, Senator Burr and his wife engaged in 33 transactions by which he sold securities in a variety of publicly-traded companies for his personal gain. In so doing, he injured shareholders—including Plaintiff Alan D. Jacobson—who purchased and/or continued to hold securities in those same companies. Plaintiff's ability to procure relief in the federal courts is unimpaired by the fact that Senator Burr is a Member of the U.S. Senate, where in his capacity as Chairman of the Senate Intelligence Committee he learned the nonpublic material information on which he based his stock trades.

2.      Senator Burr's abuse of his powers as a U.S. Senator, at a time of national crisis, is incidental to the relief sought herein.  This suit targets Senator Burr's self-enrichment at the expense of members of the public; it neither infringes impeachment powers vested in the U.S. Congress, nor rights North Carolina voters hold to elect a senator of their choosing.  For the reasons set forth below, this is a case of elementary securities fraud.

## PARTIES

3.      Plaintiff Alan D. Jacobson is an individual who held shares of Wyndham Hotels & Resorts, Inc. ("Wyndham") at the time Senator Burr and his wife sold their Wyndham shares at prices that, because the market did not possess the material information then known by Senator Burr, were artificially inflated.  Plaintiff has been damaged thereby.

4.      Senator Burr is, and was, at all relevant times, a United States Senator from North Carolina.  Senator Burr was and is the Chairman the Senate Select Committee on Intelligence and is a member of the Senate Committee on Health, Education Labor & Pensions.

## JURISDICTION AND VENUE

5.      This action arises under Sections 10(b) and 20A of the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t-1(a), SEC Rule 10b-5, 17 C.F.R. § 240.10b5, promulgated thereunder, and the Stop Trading On Congressional Knowledge Act of 2012, Pub. L. 112-105, 126 Stat 291 ("STOCK" Act).

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7.      Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391(b)(2). Many of the acts and conduct complained of herein, including Senator Burr's receipt

of material nonpublic information on which he based his stock trades, occurred in substantial part in this District.

8.      In connection with the acts and omissions alleged in this complaint, Senator Burr, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## BACKGROUND FACTS

9.      According to the World Health Organization ("WHO"), the worldwide outbreak of the novel coronavirus, COVID-19, has become a global "pandemic" due to its extraordinary "speed and scale of transmission."  The WHO Director-General has stated that the organization is "deeply concerned by both the alarming levels of spread and severity, and by the alarming levels of inaction."  "We have never before seen a pandemic sparked by a coronavirus . . . .  We have rung the alarm bell loud and clear."  As of the filing of this Complaint, COVID-19 has infected more than 330,000 people and caused approximately 14,500 deaths worldwide, and epidemiologists estimate that the number of COVID-19 cases in the world doubles every six days. Currently, there is no vaccine available to prevent the spread of COVID-19.

10.      In the United States, fears over the spread and lethality of COVID-19 have had devastating economic and social consequences.  Large public gatherings and major events have been canceled.  Employees have been told to work from home, universities have moved all classes online, and elementary schools have closed for sanitizing.  And the Governors of six states— California, New York, Illinois, Connecticut, Oregon, and New Jersey—have issued various types of "stay at home" orders.

11.     Senator Burr, who chairs the Senate Select Committee on Intelligence (the "Senate Intelligence Committee") and who is also a member of the Senate Committee on Health, Education Labor & Pensions (the "Senate Health Committee"), received daily confidential updates from the intelligence community on the COVID-19 outbreak during January and February 2020.

12.     While members of the public, including Plaintiff, were being told by the United States government, including by Senator Burr, that the United States was prepared to face emerging public health threats like the coronavirus and that COVID-19 would not have a significant impact on the economy, Senator Burr was in possession of material nonpublic information to the contrary.

13.     The Senate Health Committee, of which Senator Burr is a member, hosted a private briefing for Senators by administration officials about the outbreak of COVID-19 on January 24, 2020. *See Senate Health Committee Announces Briefing to Update Senators on Coronavirus*, Senate Health Committee on Heath, Education Labor & Pensions, Jan. 23, 2020, https://bit.ly/2Um7r6L. Upon information and belief, during this briefing, Senator Burr was given material nonpublic information regarding the outbreak of COVID-19.

14.     On February 7, 2020, Senator Burr assured the public that "the United States today is better prepared than ever before to face emerging public health threats like the coronavirus." Sen. Lamar Alexander and Sen. Richard Burr, *Coronavirus prevention steps the U.S. government is taking to protect you*, Fox News, Feb. 7, 2020, https://fxn.ws/33x0Cx. On February 12, 2020, the Dow Jones industrial average closed at its highest-ever point: 29,551.42. The Dow had remained steady around 29,000 for weeks.

15.     On February 13, 2020, Senator Burr and his wife collectively made 33 separate stock sale transactions according to a period transaction report Senator Burr filed on February 27,

2020.  Richard M. Burr, *Period Disclosure of Financial Transactions*, Feb. 26, 2020.  Attached

hereto as **Exhibit A** is a true and correct copy of this report.

      16.    The stock sales Senator Burr made represented all or most of Senator Burr's assets.

Two years ago, "Roll Call" estimated that Senator Burr had a total net worth of about $1.7 million.

In other words, on that day in February, Senator Burr suddenly decided to liquidate virtually every

asset he owned.

      17.    The following is a list of the stock that Senator Burr sold on February 13, 2020:

|  | **Company** | **Sale Date** | **Sale Value** |
|---|---|---|---|
| *Senator Richard Burr* | | | |
| 1. | Abbvie, Inc. (ABBV) | 2/13/2020 | $15,001 to $50,000 |
| 2. | Axalta Coating Systems Ltd. (AXTA) | 2/13/2020 | $15,001 to $50,000 |
| 3. | Bank of New York Mellon Corp. (BK) | 2/13/2020 | $1,001 to $15,000 |
| 4. | Colfax Corporation (CFX) | 2/13/2020 | $15,001 to $50,000 |
| 5. | CenturyLink Inc. (CTL) | 2/13/2020 | $15,001 to $50,000 |
| 6. | Dorman Products, Inc. (DORM) | 2/13/2020 | $1,001 to $15,000 |
| 7. | FedEx Corp.(FDX) | 2/13/2020 | $1,001 to $15,000 |
| 8. | Fairfax Financial Holdings Ltd. (FRFHF) | 2/13/2020 | $15,001 to $50,000 |
| 9. | Mohawk Industries, Inc. (MHK) | 2/13/2020 | $1,001 to $15,000 |
| 10. | 3M Company (MMM) | 2/13/2020 | $1,001 to $15,000 |
| 11. | Orion Engineered Carbons SA (OEC) | 2/13/2020 | $1,001 to $15,000 |
| 12. | Koninklijke Philips NV (PHG) | 2/13/2020 | $15,001 to $50,000 |
| 13. | Park Hotels & Resorts Inc. (PK) | 2/13/2020 | $1,001 to $15,000 |
| 14. | Everest Re Group (RE) | 2/13/2020 | $15,001 to $50,000 |
| 15. | Extended Stay America, Inc. (STAY) | 2/13/2020 | $15,001 to $50,000 |
| 16. | Constellation Brands Inc. (STZ) | 2/13/2020 | $15,001 to $50,000 |
| 17. | Wyndham Hotels & Resorts Inc. (WH) | 2/13/2020 | $15,001 to $50,000 |
| 18. | CSX Corp. (CSX) | 2/13/2020 | $1,001 to $15,000 |
| *Senator Richard Burr's Spouse* | | | |
| 19. | Abbvie, Inc. (ABBV) | 2/13/2020 | $50,001 to $100,000 |
| 20. | Axalta Coating Systems Ltd. (AXTA) | 2/13/2020 | $50,001 to $100,000 |
| 21. | Bank of New York Mellon Corp. (BK) | 2/13/2020 | $15,001 to $50,000 |
| 22. | CSX Corp. (CSX) | 2/13/2020 | $15,001 to $50,000 |
| 23. | CenturyLink Inc. (CTL) | 2/13/2020 | $50,001 to $100,000 |
| 24. | Dorman Products, Inc. (DORM) | 2/13/2020 | $15,001 to $50,000 |
| 25. | Fairfax Financial Holdings Ltd. (FRFHF) | 2/13/2020 | $15,001 to $50,000 |
| 26. | 3M Company (MMM) | 2/13/2020 | $15,001 to $50,000 |
| 27. | Orion Engineered Carbons SA (OEC) | 2/13/2020 | $15,001 to $50,000 |
| 28. | Koninklijke Philips NV (PHG) | 2/13/2020 | $15,001 to $50,000 |

| 29. | Park Hotels & Resorts Inc. (PK) | 2/13/2020 | $15,001 to $50,000 |
|-----|--------------------------------|-----------|---------------------|
| 30. | Everest Re Group (RE) | 2/13/2020 | $50,001 to $100,000 |
| 31. | Extended Stay America, Inc. (STAY) | 2/13/2020 | $50,001 to $100,000 |
| 32. | Constellation Brands Inc. (STZ) | 2/13/2020 | $50,001 to $100,000 |
| 33. | Wyndham Hotels & Resorts Inc. (WH) | 2/13/2020 | $50,001 to $100,000 |
| **TOTAL** | | | **$628,033 to $1.72 million** |

18.     The stock sales by Senator Burr and his wife included sales of stock in Wyndham. Senator Burr and his wife sold up to $150,000 worth of shares in Wyndham, which has lost almost 2/3 of its market value since February 13, 2020.

19.     Senator Burr's February 13, 2020 selling spree was his largest stock selling day of at least the past 14 months (according to a ProPublica review of Senate records). Unlike his typical disclosure reports, which are a mix of sales and purchases, all of the transactions on February 13 were sales.

20.     On February 13, 2020, the day that Senator Burr and his wife dumped $150,000 of Wyndham stock, Wyndham's stock traded at a high of $59.37. Over the next several weeks, Wyndham's stock dropped precipitously as the market was belatedly informed of the severity of COVID-19, as well as its potential expected impact on the economy. In particular, Wyndham, as a hotel chain, obviously stood to lose substantial business as a result of quarantine measures, border closures, and substantial reductions in tourism.

21.     By February 28, 2020, Wyndham's stock price had dropped to $49.40. By March 17, 2020, Wyndham's stock price had further dropped to $31.10. By March 19, 2020, Wyndham stock traded at $20.61—a 65% decrease from February 13.

22.     As of the filing of the Complaint, the Dow Industrial average has lost nearly 1/3 of its value since February 13, 2020.

23.     Senator Burr's knowledge of the devastating impact of COVID-19 on the United States, the mitigation measures that would be taken in efforts to curtail its spread, and the coming hit to the economy is evident not only by the fact that he received confidential briefings on COVID-19 and then sold all of the shares he held in the stock market but by comments he made to a small group of private investors.

24.     On February 27, 2020, Senator Burr, when speaking to a small private audience of well-connected constituents, organized by the Tar Heel Circle, a nonpartisan group whose membership consists of businesses and organizations in North Carolina, said that COVID-19 "is much more aggressive in its transmission than anything we have seen in recent history," comparing it to the 1918 flu pandemic.  David Merrill and Esha Day, *What the Dow's 28% Crash Tells Us About the Economy*, Bloomberg, Mar. 18, 2020, https://bloom.bg/3a9hgLY.  He warned them they should prepare for dire economic and societal effects from the spread of COVID-19.  Senator Burr advised the attendees at the luncheon:  "Every company should be cognizant of the fact that you may have to alter your travel.  You may have to look at your employees and judge whether the trip they're making to Europe is essential or whether it can be done on video conference.  Why risk it?"

25.     Sixteen days before North Carolina closed its schools over the threat of COVID-19, Senator Burr warned that it could happen.  "There will be, I'm sure, times that communities, probably some in North Carolina, have a transmission rate where they say, 'Let's close schools for two weeks.  Everybody stay home,'" he said.

26.     Senator Burr also told the luncheon attendees of the possibility that the military might be mobilized to combat COVID-19:  "We're going to send a military hospital there; it's going to be in tents and going to be set up on the ground somewhere,' Burr said at the luncheon.

'It's going to be a decision that the president and DOD make.  And we're going to have medical professionals supplemented by local staff to treat the people that need treatment.'" *Weeks Before Virus Panic, Intelligence Chairman Privately Raised Alarm, Sold Stocks*, NPR, Mar. 19, 2020, https://www.npr.org/2020/03/19/818192535/burr-recording-sparks-questions-about-private-comments-on-covid-19.

## COUNT I

**Violation of the STOCK Act, Section 10(b) of the Exchange Act, and SEC Rule 10b-5**

27.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

28.     The STOCK Act specifically prohibits Members of Congress from using nonpublic information for private profit and affirms that Members are not exempt from federal securities law prohibiting insider trading.

29.     The STOCK Act affirms that "Members of Congress . . . are not exempt from the insider trading prohibitions arising from the securities laws, including section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder."  STOCK Act § 4, Pub. L. 112-105, 126 Stat 291.

30.     Under the STOCK Act, "each Member of Congress . . . owes a duty arising from a relationship of trust and confidence to Congress, the United States Government, and the citizens of the United States with respect to material, nonpublic information derived from such person's position as a Member of Congress . . . or gained from the performance of such person's official responsibilities."  15 U.S.C. § 78u-1(g)(1).

31.     On and around February 13, 2020, Senator Burr possessed material nonpublic information regarding the impact of COVID-19 on the United States, and in particular on the U.S.

stock market.  Senator Burr learned this material nonpublic information by virtue of his duties as a United States Senator.  Senator Burr owed a duty to Congress, the United States government, and citizens of the United States, including Plaintiff, not to use material nonpublic information that he learned by virtue of his duties as a United States Senator in connection with the sale or purchase of any security.  Senator Burr breached that duty by selling stock, including Wyndham stock, based on that material nonpublic information.

32.     While Wyndham's securities traded at artificially inflated and distorted prices, Senator Burr personally profited by selling shares of Wyndham common stock at a price of approximately $59.37 on February 13, 2020, while in possession of adverse, material nonpublic information about the COVID-19.  Had Plaintiff and the market known of the material nonpublic information in Senator Burr's possession regarding COVID-19, and on which Senator Burr traded, Wyndham's stock price on February 13, 2020 would have been substantially lower.  Senator Burr and his wife sold up to $150,000 of Wyndham stock on that date, and therefore he and his wife pocketed up to $150,000 in illegal insider trading proceeds at Plaintiff's expense.

33.     Plaintiff suffered damages because, in reliance on the integrity of the market, he maintained his stock holdings in Wyndham at artificially inflated prices as a result of Defendant's violations of Section 10(b) and 20A of the Exchange Act.

## COUNT II

### Violation of the STOCK Act and Section 20A of the Exchange Act

34.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

35.     Plaintiff purchased and continues to hold Wyndham stock.  As set forth above, Senator Burr and his wife sold Wyndham stock at artificially inflated prices based on material

nonpublic information that Senator Burr learned by virtue of his duties as a United States Senator.

Senator Burr had a duty to keep this information confidential and not to trade securities based on

that information.  Senator Burr breached his duty by trading Wyndham stock on February 13, 2020

based on that information, thereby causing Plaintiff damages.

/ / /

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Richard M. Burr as follows:

(1)     Awarding compensatory damages in favor of Plaintiff against Defendant

for all damages sustained as a result of Defendant's wrongdoing, in an

amount to be proven at trial, including pre-judgment and post-judgment

interest thereon;

(2)     Awarding Plaintiff his costs and expenses in this litigation, including

reasonable experts' fees and other costs and disbursements;

(3)     Awarding Plaintiff such other and further relief as this Court deems just

and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated:  March 23, 2020

/s/ ERIC M. GEORGE
_____
ERIC M. GEORGE (D.C. BAR NO. 992046)
THOMAS P. O'BRIEN (*PRO HAC VICE
APPLICATION TO BE FILED*)
BROWNE GEORGE ROSS LLP
2121 AVENUE OF THE STARS, SUITE 2800
LOS ANGELES, CALIFORNIA 90067
PHONE: (310) 274-7100
FAX: (310) 275-5697
EMAIL:  EGeorge@bgrfirm.com

# Exhibit A

**This Report Should Be Filed With:**

Secretary of the Senate
Office of Public Records
Hart Building, Suite 232
Washington, DC 20510

# PERIODIC DISCLOSURE OF FINANCIAL TRANSACTIONS

Reporting Individual's Name: **Richard M. Burr**   ☐ Amendment

Senate Office / Agency in Which Employed

RECEIVED
SECRETARY OF THE SENATE
OFFICE OF PUBLIC RECORDS
2020 FEB 27  PM 4: 35 (Time/Date)

Page Number: 1

Report any purchase, sale, or exchange by you, your spouse, or dependent child within 30 days of receiving written notification of such transaction. Report any stocks, bonds, commodity futures, and other securities when the amount of the transaction exceeded $1,000. Include transactions that resulted in a loss. Do not report a transaction involving an excepted investment fund, any real property, or a transaction between you, your spouse, or dependent child. Please clarify which two assets are involved in any reportable exchange.  In no event may this disclosure be filed more than 45 days after such transaction.

| # | Identification of Assets | Purchase | Sale | Exchange | Transaction Date (Mo., Day, Yr.) | $1,001 – $15,000 | $15,001 – $50,000 | $50,001 – $100,000 | $100,001 – $250,000 | $250,001 – $500,000 | $500,001 – $1,000,000 | Over $1,000,000*** | $1,000,001 – $5,000,000 | $5,000,001 – $25,000,000 | $25,000,001 – $50,000,000 | Over $50,000,000 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Example (S) | IBM Corp. (stock) NYSE | X |  |  | 2/1/1X |  |  |  | X | E | X | A | M | P | L | E |
| (DC) | Microsoft (stock) NASDAQ/OTC |  | X |  | 2/27/1X |  |  |  | X | E | X | A | M | P | L | E |
| 1 | ABBV (stock) NYSE |  | X |  | 2/13/2020 |  | X |  |  |  |  |  |  |  |  |  |
| 2 | AXTA (stock) NYSE |  | X |  | 2/13/2020 |  | X |  |  |  |  |  |  |  |  |  |
| 3 | BK (stock) NYSE |  | X |  | 2/13/2020 | X |  |  |  |  |  |  |  |  |  |  |
| 4 | CFX (stock) NYSE |  | X |  | 2/13/2020 |  | X |  |  |  |  |  |  |  |  |  |
| 5 | CTL (stock) NYSE |  | X |  | 2/13/2020 |  | X |  |  |  |  |  |  |  |  |  |
| 6 | DORM (stock) NASDAQ |  | X |  | 2/13/2020 | X |  |  |  |  |  |  |  |  |  |  |
| 7 | FDX (stock) NYSE |  | X |  | 2/13/2020 |  | X |  |  |  |  |  |  |  |  |  |
| 8 | FRFHF (stock) OTCMKTS |  | X |  | 2/13/2020 |  | X |  |  |  |  |  |  |  |  |  |
| 9 | MKH (stock) NYSE |  | X |  | 2/13/2020 | X |  |  |  |  |  |  |  |  |  |  |
| 10 | MMM (stock) NYSE |  | X |  | 2/13/2020 | X |  |  |  |  |  |  |  |  |  |  |
| 11 | OEC (stock) NYSE |  | X |  | 2/13/2020 | X |  |  |  |  |  |  |  |  |  |  |
| 12 | PHG (stock) NYSE |  | X |  | 2/13/2020 |  | X |  |  |  |  |  |  |  |  |  |

Identification of Assets key:
(S) Spouse
(DC) Dependent Child
(J) Joint

ℓ3

Reporting Individual's Name

# TRANSACTIONS (continued)
(use only if needed)

Page Number 2

| # | Identification of Assets | Transaction Type (x) Purchase | Sale | Exchange | Transaction Date (Mo., Day, Yr.) | $1,001 - $15,000 | $15,001 - $50,000 | $50,001 - $100,000 | $100,001 - $250,000 | $250,001 - $500,000 | $500,001 - $1,000,000 | Over $1,000,000*** | $1,000,001 - $5,000,000 | $5,000,001 - $25,000,000 | $25,000,001 - $50,000,000 | Over $50,000,000 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PK (stock) NYSE | | X | | 2/13/2020 | X | | | | | | | | | | |
| 2 | RE (stock) NYSE | | X | | 2/13/2020 | | X | | | | | | | | | |
| 3 | STAY (stock) NASDAQ | | X | | 2/13/2020 | | X | | | | | | | | | |
| 4 | STZ (stock) NYSE | | X | | 2/13/2020 | | X | | | | | | | | | |
| 5 | WH (stock) NYSE | | X | | 2/13/2020 | | X | | | | | | | | | |
| 6 | CSX (stock) NYSE | | X | | 2/13/2020 | X | | | | | | | | | | |
| 7 | (S) ABBV (stock NYSE) | | X | | 2/13/2020 | | | X | | | | | | | | |
| 8 | (S) AXTA (stock) NYSE | | X | | 2/13/2020 | | | X | | | | | | | | |
| 9 | (S) BK (stock) NYSE | | X | | 2/13/2020 | | X | | | | | | | | | |
| 10 | (S) CSX (stock) NYSE | | X | | 2/13/2020 | | X | | | | | | | | | |
| 11 | (S) CTL (stock) NYSE | ' | X | | 2/13/2020 | | | X | | | | | | | | |
| 12 | (S) DORM (stock) NYSE | | X | | 2/13/2020 | | X | | | | | | | | | |
| 13 | (S) FRFHF (stock) OTCMKTS | | X | | 2/13/2020 | | X | | | | | | | | | |
| 14 | (S) MMM (stock) NYSE | | X | | 2/13/2020 | | X | | | | | | | | | |
| 15 | (S) OEC (stock) NYSE | | X | | 2/13/2020 | | X | | | | | | | | | |
| 16 | (S) PGH (stock) NYSE | | X | | 2/13/2020 | | X | | | | | | | | | |
| 17 | (S) PK (stock) NYSE | | X | | 2/13/2020 | | X | | | | | | | | | |

Reporting Individual's Name

# TRANSACTIONS (continued)
## (use only if needed)

Page Number: 3

| Identification of Assets | Purchase | Sale | Exchange | Transaction Date (Mo., Day, Yr.) | $1,001 - $15,000 | $15,001 - $50,000 | $50,001 - $100,000 | $100,001 - $250,000 | $250,001 - $500,000 | $500,001 - $1,000,000 | Over $1,000,000*** | $1,000,001 - $5,000,000 | $5,000,001 - $25,000,000 | $25,000,001 - $50,000,000 | Over $50,000,000 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 (S) RE (stock) NYSE | | X | | 2/13/2020 | | | X | | | | | | | | |
| 2 (S) STAY (stock) NASDAQ | | X | | 2/13/2020 | | | X | | | | | | | | |
| 3 (S) STZ (stock) NYSE | | X | | 2/13/2020 | | | X | | | | | | | | |
| 4 (S) WH (stock) NYSE | | X | | 2/13/2020 | | | X | | | | | | | | |
| 5 | | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | | | | |
| 11 | | | | | | | | | | | | | | | |
| 12 | | | | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | | | | |
| 15 | | | | | | | | | | | | | | | |
| 16 | | | | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | | | | |

Transaction Type (x)

Amount of Transaction (x)